UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

THE NETHERLANDS
INSURANCE COMPANY                                                           PLAINTIFF

v.                                                         CIVIL ACTION NO. 3:10-CV-754

JEFFRIES CONSTRUCTION, INC.
D/B/A JEFFRIES CONSTRUCTION
CO., INC., *et al.*                                                         DEFENDANTS

### MEMORANDUM OPINION

This action is brought by plaintiff The Netherlands Insurance Company ("Netherlands") for a declaratory judgment regarding the scope of Netherlands' duties to defend and indemnify the defendants–Jeffries Construction, Inc. d/b/a Jeffries Construction Co., Inc., Leonard Jeffries, and Kimberly Jeffries (collectively, "Jeffries")–in a lawsuit, styled *Dennis Wright v. Leonard Jeffries*, Case No. 10-CI-00105, that is currently pending before the Trimble County, Kentucky, Circuit Court. The state court lawsuit arose out of a construction project in which Jeffries was to be the general contractor for the construction of a house, commercial dog kennel, and workshop/garage on real estate owned by Dennis and Debbie Wright.

In the underlying lawsuit, the Wrights allege that they entered into a contract with Jeffries for Jeffries to undertake the design, planning, construction, and supervision of all portions of the construction project except for the heating, ventilation and air conditioning systems ("HVAC systems") and the installation of carpet. Jeffries was to choose and supervise all subcontractors except those who were to plan and install the HVAC systems and the carpeting. As a fee, Jeffries

was to receive 15% of the cost of construction. Ultimately, the Wrights allege, they paid all invoices for the costs of construction and an additional $92,000 as Jeffries' fee.

The Wrights claim in the state court complaint that very shortly after they moved into the house, they "began to experience serious problems related to the foundation of the house and the structure of the house." Those problems included, among other things, cracks forming in the foundation walls, water coming through the foundation walls, drywall cracking, and plumbing fixtures that did not work properly. They did not allege that they had any problems with the HVAC system or carpeting. The Wrights also supposedly had problems with the kennel, including, *inter alia*, water not running to floor drains, concrete floors cracking, and plumbing that did not work, as well as problems with the workshop/garage, such as water seeping through the foundation walls and the concrete floor. The Wrights brought claims against Jeffries Construction and Leonard Jeffries for misrepresentation, negligence, intentional failure to follow the proper standards of the construction profession, overbilling the Wrights, violations of the Kentucky Building Code, and punitive damages. The Wrights also sued a number of Jeffries' subcontractors for various claims of faulty workmanship, for which the Wrights claim Jeffries is jointly and severally liable due to the fact that the subcontractors were under Jeffries' direct supervision and control.

During the construction project, Jeffries had a commercial general liability ("CGL") insurance policy from Netherlands. Netherlands filed this action against Jeffries, seeking a declaratory judgment that it owed no duty to defend or indemnify any claims made by the Wrights against Jeffries. Thereafter, Netherlands moved for summary judgment (DN 22). Jeffries cross-moved for summary judgment (DN 29).[1]

---

[1] Netherlands has requested oral argument on the cross-motions for summary judgment (DN
(continued...)

To prevail on a motion for summary judgment, the movant must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine issue of material fact arises when there is sufficient evidence on which the jury could reasonably find for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1985). The disputed issue need not be resolved conclusively in favor of the non-moving party, but that party must present sufficient probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-289 (1968). The evidence must be construed in the light most favorable to the non-moving party. *Summers v. Leis*, 368 F.3d 881, 885 (6th Cir. 2004).

Under Kentucky law, the construction and legal effect of an insurance contract is matter of law for a court. *Bituminous Cas. Corp. v. Kenway Contracting, Inc.*, 240 S.W.3d 633, 638 (Ky. 2007). Where the terms of an insurance policy are unambiguous, a court applies the ordinary meaning of the words of the policy. *Id.* By contrast, if the language of the policy is ambiguous, the court must liberally construe the contract and resolve all doubts in favor of the insured. *Id.*; *see Kentucky Farm Bureau Mut. Ins. Co. v. McKinney*, 831 S.W.2d 164, 166 (Ky. 1992).

Jeffries' CGL policy from Netherlands stated that it provided the following coverage:

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against

---

[1](...continued)
34). That request will be denied, as the court sees no need for oral argument.

> any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .
>
> . . .
>
> b. This insurance applies to "bodily injury" and "property damage" only if:
>
> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; [and]
>
> (2) The "bodily injury" or "property damage" occurs during the policy period . . . .

The Policy defined an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

Netherlands admits that the insurance policy at issue requires it to indemnify Jeffries for "damage to personal property of the [Wrights] allegedly occurring as a consequence of Jeffries Construction's faulty or defective workmanship (i.e., 'consequential damages')." However, Netherlands argues that "[n]o indemnification is owed under the Netherlands' policy of insurance for any of the costs to repair or replace Jeffries Construction's work (i.e., 'direct damages') occurring as a result of faulty workmanship, breach of contract, misrepresentation and billing disputes," nor are punitive damages covered. Netherlands contends that none of those damages constitute "occurrences" under the contract. Jeffries argues in its motion for summary judgment that Netherlands is required to indemnify Jeffries for any claims regarding faulty workmanship of its subcontractors, as well as any claims regarding Jeffries' supervision and direction of its subcontractors.

We begin with the faulty workmanship claims. In *Cincinnati Insurance Co. v. Motorists Mutual Insurance Co.*, 306 S.W.3d 69 (Ky. 2010), the Supreme Court of Kentucky addressed the meaning of "occurrence" in CGL policies. The Kentucky Supreme Court held that "claims of faulty

- 4 -

workmanship, standing alone, are not 'occurrences' under CGL policies." *Cincinnati Ins.*, 306 S.W.3d at 73. The court found that the word "accident," as used in the definition of "occurrence" in a CGL policy, was not ambiguous as applied to claims of faulty workmanship. *Id.* at 74. It explained that the term "accident" incorporates the "doctrine of fortuity." *Id.* at 74-76. While noting that a loss could not be fortuitous if it was intended to occur, the Court also noted that it is very rare that a contractor intends to perform substandard work. *Id.* at 74. Thus, defining an accident solely based on intent would essentially turn an insurance policy into a performance bond or guarantee, so long as there was no proof that the contractor intentionally engaged in faulty workmanship. *Id.* at 75. The Kentucky Supreme Court therefore found that fortuity also included an aspect of "control." *Id.* at 74-76. In that regard, the Court explained that the faulty workmanship claim in that case did not arise from a fortuitous event because the contractor "had control over the construction of the [allegedly substandard] home, either directly or through the subcontractors it chose." *Id.* at 76. The Court noted that its holding that claims of faulty workmanship were not occurrences was supported by policy reasons as well:

> [R]efusing to find that faulty workmanship, standing alone, constitutes an "occurrence" under a CGL policy "ensures that ultimate liability falls to the one who performed the negligent work . . . instead of the insurance carrier. It will also encourage contractors to choose their subcontractors more carefully instead of having to seek indemnification from the subcontractors after their work fails to meet the requirements of the contract."

*Id.* at 75 (quoting *L-J, Inc. v. Bituminous Fire & Marine Ins. Co.*, 621 S.E.2d 33, 37 (S.C. 2004)).

The Kentucky Supreme Court's opinion in *Cincinnati Insurance* makes absolutely clear that, under Kentucky law, Netherlands has no duty to indemnify Jeffries for any faulty workmanship done directly by Jeffries. Moreover, the language in *Cincinnati Insurance* strongly suggests that

Netherlands has no duty to indemnify Jeffries for any faulty workmanship done by the subcontractors that were chosen by Jeffries.

Despite the language of *Cincinnati Insurance*, Jeffries argues that any faulty workmanship by a subcontractor constitutes an occurrence under Jeffries CGL policy. In support, Jeffries relies on a subcontractor exception to the "your work" exclusion in the policy. The "your work" exclusion states as follows:

> **l. Damage to Your Work**
>
> "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".
>
> This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a sub-contractor.

The Policy defines "your work" as follows:

> 22. "Your work":
>
> a. Means:
>
> (1) Work or operations performed by you or on your behalf; and
>
> (2) Materials, parts or equipment furnished in connection with such work or operations.
>
> b. Includes
>
> (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and
>
> (2) The providing of or failure to provide warnings or instructions.

Jeffries contends that the subcontractor exception to the "your work" exclusion is meaningless if there is no coverage for faulty workmanship done by a subcontractor. Jeffries points out that the

*Cincinnati Insurance* decision by the Kentucky Supreme Court did not explicitly consider this argument.

However, since the parties completed the briefing of their cross-motions for summary judgment, the Sixth Circuit has issued an opinion that rejected the defendants' argument. In *McBride v. Acuity*, 2013 WL 69358 (6th Cir. Jan. 7, 2013), the plaintiffs argued that the subcontractor exception to the "your work" exclusion meant that "the faulty workmanship of a subcontractor is covered as an occurrence." *See McBride*, 2013WL 69358, at *4. The Sixth Circuit noted that courts in some jurisdictions have agreed with that argument, but courts in other jurisdictions have found "that the subcontractor exception does not provide coverage for damage to the insured's work." *Id.* at *4. The Sixth Circuit continued that the language in *Cincinnati Insurance* "strongly suggests" that Kentucky courts would permit coverage only "when someone else's property, rather than the insured's non-faulty workmanship, is damaged by the work of the sub-contractor." *Id.* Accordingly, Netherlands need not indemnify Jeffries for the cost of replacing or repairing faulty workmanship by Jeffries' subcontractors.

Jeffries also argues that Netherlands has a duty to indemnify it for claims by the Wrights that Jeffries inadequately supervised or improperly directed its subcontractors. However, even to the extent that those are conceived of as separate claims rather than simply claims of faulty workmanship by subcontractors, the rationale of *Cincinnati Insurance* forecloses Jeffries argument that Netherlands must indemnify Jeffries for such claims. There is simply no way to classify a contractor's inadequate supervision and improper direction of its subcontractors as the types of fortuitous event that constitute "occurrences" to which coverage under a CGL extends.

As with the "your work" exception discussed above, Jeffries argues that the language of an exclusion to coverage shows that coverage exists for claims concerning its supervision and direction of subcontractors. The exclusion to which Jeffries points is an endorsement modifying coverage to exclude damages arising from an insured's rendering or failure to render certain professional services. The exclusion states that the term "professional services" does not include "services within construction means, methods, techniques, sequences and procedures employed by you in connection with your operations in your capacity as a construction contractor."[2] Jeffries argues that the fact that

---

[2] The full language of the endorsement is as follows:

EXCLUSION – CONTRACTORS — PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph 2., Exclusions of Section 1 – Coverage A – Bodily Injury and Property Damage Liability and Paragraph 2., Exclusions of Section I – Coverage B – Personal and Advertising Injury Liability:

1. This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or on your behalf, but only with respect to either or both of the following operations:

   a. Providing engineering, architectural or surveying services to others in your capacity as an engineer, architect or surveyor; and

   b. Providing, or hiring independent professionals to provide, engineering, architectural or surveying services in connection with construction work you perform.

2. Subject to Paragraph 3. below, professional services include:

   a. Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and

   b. Supervisory or inspection activities performed as part of any related architectural or engineering activities.

(continued...)

- 8 -

the endorsement only excludes certain narrowly-defined professional services from coverage means that coverage must extend to other services performed by the insured, such as a contractor's supervision and direction of subcontractors.

However, it would be putting the cart before the horse to determine that because a particular claim does not fit within an exclusion, it must be covered. "'[E]xclusion clauses do not grant coverage; rather, they subtract from it.'" *Kemper Nat. Ins. Cos. v. Heaven Hill Distilleries, Inc.*, 82 S.W.3d 869, 872 (Ky. 2002) (quoting *Harrison Plumbing & Heating Inc. v. New Hampshire Ins. Group*, 681 P.2d 875, 880 (Wash. Ct. App. 1984)). Thus, the court will not look to the language of the exclusion to determine coverage. Instead, the court will first determine if the claim is covered under the coverage provisions of the policy. Only then does any language in an exclusion become relevant. Since *Cincinnati Insurance* makes clear that only fortuitous events are considered "occurrences," and since there is no way to view a contractor's inadequate or improper supervision and direction of its subcontractors as a fortuitous event, the court finds that coverage does not extend to such claims. Accordingly, Netherlands need not indemnify Jeffries Construction for damages arising from repairs or replacements to work due to Jeffries' inadequate or improper supervision and direction of its subcontractors.

The court also finds that Netherlands has no duty to indemnify Jeffries for any breach of contract, misrepresentation, billing dispute, or punitive damages claims. As to the breach of contract claim, the Sixth Circuit has held that under Kentucky law, breach of contract claims are not an

---

[2](...continued)

    3. Professional services do not include services within construction means, methods, techniques, sequences and procedures employed by you in connection with your operations in your capacity as a construction contractor.

"occurrence" that is covered by a CGL policy. *Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 582 (6th Cir. 2001). The Kentucky Court of Appeals subsequently came to the same conclusion, finding the Sixth Circuit's opinion in *Lenning* persuasive. *Kentucky Farm Bureau Mut. Ins. Co. v. Blevins*, 268 S.W.3d 368, 374-375 (Ky. Ct. App. 2008) (agreeing with the Sixth Circuit's holding in *Lenning* that a breach of contract is not an "occurrence").

Nor can the claim that Jeffries overbilled the Wrights be characterized as an "occurrence" under a CGL policy. Such a claim is a purely economic claim; it is not a claim based around the type of fortuitous event over which Jeffries had no control that *Cincinnati Insurance* envisions as giving rise to coverage. Indeed, as the Sixth Circuit noted in *Lenning*, "[c]ourts in other states have held that such a purely economic claim cannot constitute an 'occurrence.'" 260 F.3d at 582. Further, there is also no basis to find that the alleged overbilling gave rise to "property damage" or "bodily injury," as required for coverage under a CGL policy.

Likewise, the Wrights' claims for misrepresentation and punitive damages are not covered by the CGL policy because there is no way to classify them as "occurrences." The Wrights allege that Leonard Jeffries misrepresented his abilities, knowledge, skill, and training in the construction profession and building trades, and the Wrights' property was damaged as a result of the misrepresentation. The Wrights also allege that they are entitled to punitive damages from Jeffries because Jeffries acted intentionally or with reckless disregard of the damage likely to result to the Wrights. A person's misrepresentation of his own abilities, knowledge, skill, and training simply cannot be considered an accident or fortuitous event. Similarly, it cannot be said that a person's actions, taken intentionally or with reckless disregard that damage might result to another, are the types of accidents that constitute "occurrences" as delineated in *Cincinnati Insurance*.

Lastly, because the duty to defend differs from the duty to indemnify, the court will briefly address it to make clear the obligations of Netherlands to defend Jeffries. The duty of an insurance company to defend its insured is broader than the duty to indemnify. *James Graham Brown Found., Inc. v. St. Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273, 279-280 (1991). "The insurance company must defend any suit in which the language of the complaint would bring it within the policy coverage regardless of the merit of the action." *Id.* at 279. "The duty to defend continues to the point of establishing that liability upon which plaintiff was relying was in fact not covered by the policy and not merely that it might not be." *Id.*

As noted above, Netherlands concedes that it must indemnify Jeffries for certain "consequential damages," which it defines as "damage to personal property of the [Wrights] allegedly occurring as a consequence of Jeffries Construction's faulty or defective workmanship." As there is a potential source of liability for which Netherlands would be required to indemnify Jeffries, Netherlands retains a duty to defend Jeffries in the underlying state court action. However, at the point when that potential source of liability has been resolved, Netherlands will no longer retain any duty to defend Jeffries since the only claims that will remain in the underlying state court lawsuit, if any, will be ones for which Netherlands has no duty to indemnify Jeffries.

In sum, Netherlands owes no duty to indemnify Jeffries for claims of faulty workmanship, whether by Jeffries or its subcontractors; inadequate or improper supervision and direction of subcontractors; breach of contract; overbilling; misrepresentation; and punitive damages. And, while Netherlands must defend Jeffries as long as the "consequential damages" remain a potential source of liability for which Netherlands would be required to indemnify Jeffries, if that potential source of liability were to be resolved, Netherlands would owe no further duty to defend Jeffries.

A separate order will be entered in accordance with this opinion.[3]

March 18, 2013

**Charles R. Simpson III, Senior Judge
United States District Court**

---

[3] Netherlands recently moved to amend its complaint to add the Wrights as defendants. The court granted that motion as unopposed. Although this opinion resolves all of the substantive claims asserted against the Jeffries defendants, it does not address any claims Netherlands believes it has against the Wrights. Accordingly, the order accompanying this opinion will not be entered as a final and appealable order.